UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMIA SELIM KHALIL, et al., | |
| Plaintiffs, | HONORABLE JOSEPH E. IRENAS |
| v. | CIVIL ACTION NO. 12-3817 (JEI/KMW) |
| JANET NAPOLITANO, et al., | |
| Defendants. | **OPINION** |

**APPEARANCES**:

LAW OFFICES OF DAVID E. PIVER
By: Monica Singh, Esq.
150 Strafford Avenue, Suite 115
Wayne, PA 19087
    Counsel for Plaintiffs.

DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
By: Patricia E. Bruckner, Esq.
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
    Counsel for Defendants.

**Irenas**, Senior District Judge:

Pending before the Court is the Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment. Also pending before the Court is the Plaintiffs' Cross Motion for Summary Judgment. For the reasons set forth below, the Defendants' Motion to Dismiss will be granted, and therefore the Plaintiffs' Cross Motion will be denied as moot.

1

**I.**

The parties agree on the relevant facts. Plaintiff Samuel Girgis Hanna ("Hanna") was born on April 18, 1992. (Defs.' Statement of Material Facts at ¶ 1.) According to the Complaint, Hanna is an Egyptian native, and a citizen of Egypt. (Compl. ¶ 4.)

At some point after his birth, Hanna came to the United States.[1] On January 18, 2008, Plaintiff Samia Salim Khalil ("Khalil") and her husband, William Ishak Khalil, filed an adoption complaint with the New Jersey Superior Court, initiating proceedings to adopt Hanna as their child. (Defs.' Statement of Material Facts at ¶ 2; Compl. ¶ 13.) On April 11, 2008, the Superior Court held a preliminary hearing, at which point the parental rights of Hanna's birth parents were terminated and Hanna was placed in private placement adoption with Khalil and her husband. (Compl. Ex. 9.) Following the preliminary hearing and consistent with the statutory adoption scheme, Child and Home Study Associates began preparing a report concerning the placement of Hanna with Khalil and her husband, per N.J.S.A. 9:3-48(c)(4)(d).[2] (Compl. Ex. 9 at ¶ 2.) On April

---

[1] Neither the Plaintiffs nor Defendants provided information about Hanna's place of birth or when Hanna entered the United States. However, these facts do not bear on deciding the Motions currently pending before the Court.
[2] Based on the Order Fixing Day for Hearing, it appears that Child and Home Study Associates was first appointed on January 18, 2008 to conduct an investigation and written report pursuant to N.J.S.A. 9:3-48(a)(2), evaluating the status of Hanna's birth parents. (Compl. Ex. 8.)

18, 2008, a week after the preliminary hearing, Hanna turned sixteen years old. The Superior Court issued a Final Judgment of Adoption on October 14, 2008, making Khalil and her husband the parents of Hanna. (*Id.* at ¶ 4.) The Final Judgment indicated that Child and Home Study Associates filed a report with the Superior Court (though not provided by the Plaintiffs) focusing on the placement of Hanna with Khalil and her husband, per the statutory requirements of N.J.S.A. 9:3-48(d). (Compl. Ex. 9 at ¶ 2.) As directed in the Final Judgment of Adoption, the Superior Court ordered the finalized adoption be effected *nunc pro tunc* as of the preliminary hearing on April 11, 2008, which retroactively finalized Hanna's adoption before his sixteenth birthday. (Compl. Ex. 9 at ¶ 5.)

Khalil is a naturalized US citizen, attaining citizenship on November 14, 2007. (Compl. Ex. 10.) Prior to initiating the adoption process, Hanna was Khalil's nephew. (Pls.' Br. at 27.) On June 7, 2010, after the finalized adoption, Khalil filed a Form I-130, Petition for Alien Relative, with U.S. Citizenship and Immigration Services (USCIS), which sought to classify Hanna as Khalil's unmarried son of a US citizen in order to obtain an immigrant visa under 8 U.S.C. § 1153(a)(1). (Defs.' Statement of Material Facts at ¶ 6; Pls.' Statement of Material Facts at ¶ 6.) On April 14, 2011, USCIS denied Khalil's petition, summarizing the Board of Immigration Appeals's (BIA) prior

decisions considering *nunc pro tunc* adoptions and explaining that "[Hanna] was over the age of sixteen when the adoption took place, [therefore Hanna] could not, at one time, qualify as a child pursuant to [8 U.S.C. § 1101(b)(1)(E)]. Therefore, [Hanna] cannot be classified as [Khalil's] son or daughter for immigration purposes pursuant to [8 U.S.C. § 1153(a)(1)]." (Compl. Ex. 4 at 2.)

Khalil took a timely appeal of USCIS's denial to the BIA, which affirmed USCIS's denial on February 27, 2012. (Compl. Ex. 1.) In its decision, the BIA reviewed the fact that the Superior Court finalized Hanna's adoption effective *nunc pro tunc* before Hanna turned sixteen, but noted that because the adoption was not finalized until after Hanna actually turned sixteen, USCIS properly denied the visa petition under § 1153(a)(1) because Hanna could not be construed as Khalil's child under § 1101(b)(1)(E). (*Id.* at 1.)

On June 25, 2012, the Plaintiffs filed this lawsuit against Janet Napolitano, the then-Secretary of Homeland Security.[3] The Plaintiffs also named two additional Defendants: Alejandro Mayorkas, Director of USCIS, and Nieves Cardinale, Field Office Director of USCIS in Mount Laurel, New Jersey, who actually

---

[3] USCIS is an agency within the Department of Homeland Security. 6 U.S.C. § 271. The BIA is a component of the Department of Justice. 8 C.F.R. § 1003.1(a)(1).

rendered the decision on the Plaintiffs' USCIS petition. (Compl. ¶¶ 5-7.)

The Plaintiffs allege two causes of action against the Defendants regarding USCIS's denial of the I-130 petition, both under the Administrative Procedures Act (APA), 5 U.S.C. §§ 551 et seq. First, that the Defendants have unlawfully withheld agency action in violation of 5 U.S.C. § 706(1), and second, that the Defendants have acted in an arbitrary and capricious manner or otherwise in violation of 5 U.S.C. § 706(2). (Compl. ¶¶ 19-22.)

On January 22, 2013, the Defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. (Dkt. no. 12.) On February, 19, 2013, the Plaintiffs filed a Cross Motion for Summary Judgment. (Dkt. no. 19.) The Court considers these Motions together and accordingly grants the Defendants' Motion to Dismiss, rendering the Plaintiffs' Cross Motion for Summary Judgment moot.

## II.

A defendant may move to dismiss a claim for lack of subject-matter jurisdiction pursuant to the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(1). In reviewing a motion under Rule 12(b)(1), the Court must first determine whether the moving party presents a facial or factual challenge

to subject-matter jurisdiction.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  When reviewing a facial challenge, which "contests the sufficiency of the pleadings, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *In re Schering Plough*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.2d 169, 176 (3d Cir. 2000)).  Because subject-matter jurisdiction involves a court's power to hear a case, the parties cannot forfeit or waive it, and courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  If a court concludes that it does not have subject-matter jurisdiction over the action, the court is required to dismiss the action.  Fed. R. Civ. P. 12(h)(3).

Similarly, a defendant may move to dismiss a claim under Rule 12(b)(6) for failure to state a claim.  To survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P.

8(a)(2). When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all allegations in the complaint and view them in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In reviewing the allegations, a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the [non-movant] pleads factual content that allows the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

The Plaintiffs have sufficiently alleged facts to withstand the Defendants' facial challenge to subject-matter jurisdiction, however, the Plaintiffs have failed to meet their burden to state a claim under Rule 12(b)(6). Each of these is analyzed in turn.

7

**A.**

The Defendants initially argue that this Court lacks subject-matter jurisdiction because the BIA is not named as a Defendant in this case. Because the Plaintiffs did not need to name the BIA as a Defendant, and the named Defendants do not deprive this Court of subject-matter jurisdiction under the APA, the Plaintiffs have satisfied their burden and subject-matter jurisdiction is proper in this Court.

The APA sets out the manner in which plaintiffs may seek judicial review of agency proceedings. 5 U.S.C. § 703. Unless a "special statutory review proceeding" exists, a plaintiff may bring its claim in any court of "competent jurisdiction. *Id.* When seeking judicial review under the APA, the United States, the agency by its official title, or an appropriate officer may be named as defendants. *Id.*

Under the terms of the APA, a final agency action may be reviewed by the federal courts. 5 U.S.C. § 704. Final actions may not be "preliminary, procedural, or intermediate" actions or rulings. *Id.* Agency action is considered final "whether or not there has been presented or determined an application for a declaratory, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to a superior agency authority." *Id.* Unfavorable decisions in matters before USCIS

"may be appealed," to the BIA, but administrative exhaustion of an adverse determination of an I-130 petition is not required for judicial review if the petition is otherwise final under the APA. 8 C.F.R. § 103.3(a)(1)(ii). Finally, the district courts may review the final determinations of visa denials when they are alleged to have violated the terms of the APA. *See Kosak v. Aguirre*, 518 F.3d 210, 212 (3d Cir. 2008) (reviewing BIA's interpretation of 8 U.S.C. § 1153(a)(4)).

The Defendants argue that the Plaintiffs' failure to name (1) the United States, (2) the Department of Justice or the BIA, or (3) the appropriate officers within the DOJ or BIA, destroys subject-matter jurisdiction in this Court. (Defs.' Br. at 9-10.) However, the Plaintiffs' Complaint indicates that they seek a declaratory judgment and judicial determination of the USCIS proceedings, which became final on April 14, 2011 when USCIS issued a decision on Khalil's I-130.[4] (Compl. ¶ 23.) In seeking relief from this final judgment, the Plaintiffs named the requisite agency officials at USCIS under the APA: Defendant Napolitano was the then-Secretary of Homeland Security, Defendant Mayorkas is Director of USCIS, and Defendant Cardinale is Director of the USCIS Mount Laurel Field Office. (Compl. ¶¶

---

[4] The Court is aware that the Plaintiffs also request review of the BIA's final adjudication. (*See* Compl. ¶ 24.) However, as USCIS actually issued the denial of Khalil's I-130, the relief that the Plaintiffs seek from this Court does not actually implicate the adjudication made by the BIA.

5-8.) Because the Plaintiffs seek a declaratory judgment and judicial determination of USCIS actions, they have named proper defendants under the APA and therefore subject-matter jurisdiction in this Court is proper under 28 U.S.C. § 1331.[5]

---

[5] Despite reaching this conclusion, which is in accordance with the Third Circuit's decision in *Kosak*, the Court is skeptical that subject-matter jurisdiction is properly vested in this Court. In particular, the Court is concerned that judicial review of legal questions and claims (relating to BIA determinations) are specifically delegated to the courts of appeals under the plain language of the Immigration and Naturalization Act (INA). Specifically,
> Nothing in [8 U.S.C. §§ 1252(a)(2)(B) or (C)], or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). Moreover, § 1252(a)(5) explains that a petition for review, "filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review" when challenging an order of removal under this chapter of the INA. The Third Circuit did not address this concern in *Kosak*, where it affirmed the district court's decision on the plaintiff's claim that the BIA's interpretation of 8 U.S.C. § 1153(a)(4) was not arbitrary or capricious under the APA. *See Kosak v. Aguirre*, 518 F.3d 210, 212 (3d Cir. 2008). However, the INA's limitation on judicial review has been applied to 8 U.S.C. § 1153(b)(2)(A), which grants a preference to immigrants seeking visas who hold advanced degrees or are of "exceptional ability." *Zhu v. Gonzales*, 411 F.3d 292, 293 (D.C. Cir. 2005). In *Zhu*, the district court (affirmed on appeal) held that judicial review of the visa at issue was precluded by 8 U.S.C. § 1252(a)(2)(B)(ii) because § 1153(b) required the executive branch to use its discretion in waiving a requirement that the Secretary of Labor file a declaration that there were not sufficient American workers in the field that the plaintiffs sought to work in. *Zhu*, 411 F.3d at 294. Here, Khalil seeks review of Hanna's visa determination, filed under a companion provision, 8 U.S.C. § 1153(a)(1). The I-130 petition required USCIS to determine whether Hanna's *nunc pro tunc* adoption properly brought Hanna within the INA's definition of a child as part of its acceptance or denial of the I-130. 8 C.F.R. § 204.2(d)(2)(vii). This is a question of law, and raises a review similar to the discretionary function described in *Zhu*, and therefore might bring Khalil's petition under the terms of 8 U.S.C. § 1252. In light of the fact that the Third Circuit reviewed a similar lawsuit brought under the APA in *Kosak* and did not address jurisdictional issues, this Court does not find that subject-matter jurisdiction is lacking. However, the Court has some question given the jurisdictional provisions discussed here.

**B.**

Because the Defendants' have adopted a reasonable interpretation of "child" under 8 U.S.C. § 1101(b)(1)(E), this Court must grant the Defendants' Motion to Dismiss for failure to state a claim.

Any review of agency action is subject to the two-part test articulated by the Supreme Court in *Chevron v. Natural Res. Def. Council*, 467 U.S. 837 (1984). *In re Avandia Mktg.*, 685 F.3d 353, 366 (3d Cir. 2010). When reviewing such action, first the court must determine whether congressional intent is clear, and if so, must abide by that intention regardless of any agency regulations. *Id.* If the intention is unclear, where the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (quoting *Chevron*, 467 U.S. at 843). Courts are to defer to the agency's regulations unless they are "arbitrary, capricious, or manifestly contrary to the statute." *In re Avandia Mktg.*, 685 F.3d at 366 (quoting *Chevron*, 467 U.S. at 844).

An agency's action may be construed as arbitrary or capricious if the agency relied on factors that Congress did not intend for it to rely upon, "entirely failed to consider an important aspect of the problem," provided an explanation for its action in contravention with the weight of the evidence

11

before it, or is "so implausible" that it could not be attributed to an agency with expertise in the matter. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011).

Even if the Court were to accept that the statute were ambiguous, the Defendants' interpretation of 8 U.S.C. § 1101(b)(1)(E) is reasonable. At issue here is whether USCIS and BIA's exclusion of *nunc pro tunc* adoptions, finalized after the beneficiary turns sixteen but given retroactive effect before the beneficiary's sixteenth birthday, comports with 8 U.S.C. § 1101(b)(1)(E), which defines a "child" throughout the INA as "a child adopted while under the age of sixteen years." (Pls. Br. at 8.) If USCIS and BIA's rejection of *nunc pro tunc* adoptions under this provision is arbitrary or capricious, then Hanna's adoption should be recognized and Hanna would be considered an "unmarried son[]" of a US Citizen, entitling him to the visa preference in 8 U.S.C. § 1153(a)(1).

Under the circumstances of Khalil's petition, the Defendants acted reasonably in prohibiting the recognition of Hanna's *nunc pro tunc* adoption and denying the visa preference under 8 U.S.C. § 1153(a)(1). Both USCIS and the BIA cited to two prior BIA precedential decisions considering *nunc pro tunc* adoptions, *Matter of Cariaga*, 15 I.&N. Dec. 716 (BIA 1976), and

*Matter of Driago*, 18 I.&N. Dec. 223 (BIA 1982). (Defs.' Br. at 16; Compl. Ex. 1, 4.) In *Cariaga*, the BIA strictly interpreted the adoption age restriction under § 1101(b)(1)(E) and did not recognize a *nunc pro tunc* adoption after determining that Congress "fear[ed] that fraudulent adoptions would provide a means of evading the [immigration] quota restrictions." *Cariaga*, 15 I.&N. Dec. at 717. In *Driago*, the BIA rejected a *nunc pro tunc* adoption because "[i]t was Congress' intent that the age restriction in [8 U.S.C. § 1101(b)(1)(E)] be construed strictly." *Driago*, 18 I.&N. Dec. at 224. Here, both USCIS and the BIA did not act according to other intentions that Congress did not expect or in some arbitrary fashion; rather, the BIA determined Congress's intention was to avoid fraud and interpreted the statute strictly in order to do so.[6]

Furthermore, the circumstances of Hanna's *nunc pro tunc* adoption do not indicate that the Defendants acted in an arbitrary and capricious fashion. The Final Judgment of Adoption indicates that Child and Home Study Services filed a report of its investigation into Hanna's adoption, prior to the entry of the Final Judgment. (Compl. Ex. 9, at ¶ 2.) This investigation, according to the statutory requirements, was to

---

[6] The Eleventh Circuit has reached the same conclusion, holding that the BIA's rejection of *nunc pro tunc* adoptions effectuates Congress's intention to avoid fraudulent adoptions, and is a reasonable interpretation of the statute. *Mathews v. USCIS*, 458 Fed. Appx. 831, 833 (11th Cir. 2012) (per curiam).

supervise and evaluate the continued placement of Hanna with Khalil after the preliminary hearing but before the Final Judgment, per N.J.S.A. 9:3-48(d).  This requirement could have been waived at the preliminary hearing in light of Hanna and Khalil's niece-nephew relationship.  N.J.S.A. 9:3-48(c)(4)(d).  However, the facts do not indicate that the Superior Court waived this requirement, and therefore Child and Home Study Services continued its investigation, observing and evaluating Hanna's placement pursuant to N.J.S.A. 9:3-48(d).  Thus, between April 11, 2008, and October 14, 2008, Hanna's adoption process was ongoing, at least pending the completion of the continued evaluation of Khalil and her husband, Hanna's adoptive parents.  The rejection of a retroactive effective date, while continued investigation into Hanna's adoptive parents was ongoing, is in line with Congress's intention to prevent fraud in the application of the immigration laws.

In sum, the rejection of Hanna's *nunc pro tunc* adoption follows a reasonable interpretation of the immigration laws in accordance with congressional intent, and therefore the Defendants have not acted in an arbitrary or capricious fashion in violation of the APA.  Because the Plaintiffs have failed to demonstrate that they are entitled to relief under the APA, the Defendants' Motion to Dismiss must be granted.

## IV.

Based on the foregoing, the Court will grant Defendants' Motion to Dismiss for failure to state a claim.  This renders the Plaintiffs' Cross Motion for Summary Judgment moot, and requires dismissal of the case.  An appropriate Order will be issued accompanying this Opinion.

Date: 10-23-13

/s/ Joseph E. Irenas
**Joseph E. Irenas, S.U.S.D.J.**